**Francis A. BENTON, Appellant,**

v.

**Curtis REID, Appellee.**

**No. 13188.**

United States Court of Appeals
District of Columbia Circuit.
Argued March 7, 1956.
Decided March 29, 1956.

---

Mr. John J. Dwyer, Washington, D. C., for appellant.

Mr. Andrew Conlyn, Asst. Corporation Counsel for the District of Columbia, for appellee. Messrs. Vernon E. West, Corporation Counsel, Chester H. Gray, Principal Asst. Corporation Counsel, and Milton D. Korman, Asst. Corporation Counsel, also entered appearances for appellee.

Before EDGERTON, Chief Judge, and FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

Appellant Benton is a chronic sufferer from tuberculosis, in communicable form. Finding that his being at large would endanger the public health, the Director of Public Health sought and obtained an order of the Municipal Court for his detention, under Section 6–119b of the D.C.Code 1951. The Director caused him to be confined in the hospital section of the District of Columbia jail. That section is an integral part of the jail, and is similarly barred and guarded. Some months later, appellant applied to the District Court for a writ of habeas corpus. After a hearing, the District

782

Court denied the application. This appeal followed.

■ The question presented is whether Section 6–119a of the Code authorizes appellant's detention in the place here selected by the Director—a place of imprisonment. That section in terms authorizes the Director to designate as the place for detention of persons who endanger the public health "any place or institution" in the District or "any institution" located outside the District which is under the supervision of the government of the District of Columbia or any of its agencies. Appellee urges that this broad language comprehends detention in a jail. But the function of a jail is to provide a place for punishment of crimes,[1] and its customary occupants are persons convicted of crime or awaiting trial for crime. In the absence of specific language, we cannot lightly infer that Congress intended that a person like appellant, neither indicted for nor convicted of any crime, is to be confined in a penal institution to suffer the social stigma and bad associations resulting therefrom. Cf. Ex parte McGee, 1919, 105 Kan. 574, 185 P. 14, 17, 8 A.L. R. 831; Dowling v. Harden, 1921, 18 Ala. App. 63, 88 So. 217. Grave constitutional questions would arise under the Fifth and Sixth Amendments if the statute were construed to permit this. It is our duty to interpret the statute to avoid doubts as to constitutional validity. Crowell v. Benson, 1932, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598.

■ Light on the intention of Congress is, we think, cast by related sections of the statute. In Section 6–119d of the Code Congress provided that it shall be unlawful for a person to leave the place or institution in which he has been detained by the Director without being discharged in the manner provided in Sections 6–119b or 6–119c, and in Section 6–119h provided that such a person may be punished by a fine of not more than $300 or by imprisonment for not more than 90 days, or both, in the discretion of the court. If Congress had intended by the broad language of Section 6–119a to authorize imprisonment in a penal institution upon a mere finding by the Director that a person has a communicable disease and is endangering the public health, the provisions of Sections 6–119d and 6–119h would be superfluous. Their inclusion makes it abundantly clear that the places of detention referred to in Section 6–119a do not include jails, and that imprisonment there is authorized only as punishment, after trial and conviction, for, inter alia, the act of leaving, without a legal discharge, the place of confinement designated pursuant to Section 6–119a.[2]

■ In the present case, the record shows that appellant has previously been placed on several occasions in hospitals not connected with the jail, and that he has left without permission. But the District has not chosen to prosecute him for any of these acts under Section 6–119h. Instead it has put him under armed guard in the jail hospital, with jail inmates as associates, and has kept him there without trial for nearly a year —far longer than the period allowable after trial. His detention in the jail at

1. See White v. Reid, D.C.D.D.C.1954, 125 F.Supp. 647, 650.

2. In 1911 Congress merged the jail and the Washington Asylum, a hospital, into one institution called the Washington Asylum and Jail. See Jones v. District of Columbia, 1922, 51 App.D.C. 319, 279 F. 188; § 24–407, D.C.Code 1951. Over the years the care of the sick was, however, gradually transferred to Gallinger (now D. C. General) Hospital. In 1952 operation of the latter hospital was transferred to the Department of Public Health, and the name "Washington Asylum and Jail" was not referred to and by inference was abolished. See Reorganization Plan No. 5 of 1952 and Reorganization Orders Nos. 34 and 57, D.C.Code, Title 1—App., Supp. III, pp. 13–15, 34–35, 56–59 (1951). Cf. Calomeris v. District of Columbia, 1955, 96 U.S.App.D.C. 364, 226 F.2d 266. There is, therefore, at the present time no basis for concluding that the jail's hospital is one intended for the detention and treatment of any physically sick persons other than inmates of the jail.

the present time is plainly not authorized, no matter how desirable it may be from the standpoint of the public health. Habeas corpus is available to him to test the place of detention. Miller v. Overholser, 1953, 92 U.S.App.D.C. 110, 206 F.2d 415.

 Accordingly, the judgment of the District Court must be reversed and the case remanded with directions to issue the writ and discharge appellant from the custody of appellee, without prejudice to the District's right to transfer appellant thereupon to a hospital or other proper place. We need not now pass on the degree of discipline or restraint which may there be properly imposed.

So ordered.