John Michael Moran **KAUTTER**,
Petitioner,

v.

**Curtis REID**, Respondent.

No. 61–60.

United States District Court
District of Columbia.

April 12, 1960.

Mr. John W. Brennan, Washington, D. C., for petitioner.

Mr. William W. Pavis, Asst. Corp. Counsel, Washington, D. C., for respondent.

YOUNGDAHL, Judge.

This is an application for a writ of habeas corpus.

Petitioner, presently nineteen years of age, is confined in the District of Columbia Jail.[1] On December 19, 1956, the Juvenile Court committed him for his

1. On Friday, April 8, 1960, the Court took the application for the writ under advisement. Although D.C.Code, § 11–927 apparently does not contemplate the

minority to the National Training School for Boys. Petitioner remained there until January 23, 1958 when, at age 17, he was paroled. On April 1, 1960, the petitioner was arrested under a parole violation's warrant to await a hearing before the Youth Correction Division, United States Board of Parole, to determine whether his parole should be revoked.

Two questions are posed: can a boy be paroled from the National Training School, and if so, can the parole be revoked? Second, is the petitioner's present confinement in the District of Columbia Jail a lawful one?

■ D.C.Code, § 32–820 expressly provides for parole from the National Training School "as provided in section 32–821." Section 32–821 provides that the Board of Trustees "may in its discretion parole * * * under such conditions and regulations as the said Board of Trustees may deem proper." [2] Express mention of revocation is not found, but nothing express is necessary; since parole is authorized, by definition, revocation is also. The statute clearly implies that a boy may be paroled from the National Training School on the condition subsequent that he obey the laws of the community.

The second question is thus reached: may a boy paroled from the National Training School be detained in the District of Columbia Jail under a warrant issued by the parole authorities?

In White v. Reid, D.C.D.C.1954, 125 F.Supp. 647, Chief Judge Laws was faced with this question and held that the detention was unlawful. This Court concurs in that holding.

■ The petitioner here is not detained in the jail under an arrest warrant or under an indictment charging him with committing a crime at a time when he was more than eighteen years of age.[3] He is in the Jail under a warrant issued by the parole authorities which, in turn, stems from the petitioner's original commitment by the Juvenile Court to the National Training School. This commitment followed the invocation of the Juvenile Court's unique procedures which "are not criminal and penal in character, but are an adjudication upon the status of a child in the nature of a guardianship imposed by the state as *parens patriae* to provide the care and guidance that under normal circumstances would be furnished by the natural parents." White v. Reid, 125 F.Supp. at page 649.

■ Since the Juvenile Court's commitment was for the benevolent purpose of guidance and not the traditional one of punishment, certain constitutional commands could be disregarded.[4]

---

segregation from the general jail population of children over eighteen years of age, it does not prohibit it. The Court, in the exercise of its equitable powers, ordered the petitioner kept in a place apart from the other inmates pending this decision.

2. The Corporation Counsel has informed the Court that, "By Reorganization Plan No. II, May 9, 1939 [5 U.S.C.A. following section 133t], the Board of Trustees of the National Training School for Boys was abolished and its functions transferred to the Department of Justice. On October 12, 1953, pursuant to Reorganization Plan No. 2 of 1950 [5 U.S.C.A. following section 133z–15] the then Attorney General delegated to the Youth Correction Division of the Board of Parole the function of paroling juvenile offenders committed to the National Train-

ing School for Boys. (Order No. 31–53)"

3. Of course a person who commits a crime *before* he is eighteen is originally subject to the Juvenile Court's jurisdiction, even though his arrest occurs between his eighteenth and twenty-first birthdays. D.C.Code, § 11–907 (1951 ed.).

4. E. g., the Fifth Amendment's "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury [with exceptions not pertinent] * * *." And see discussions in State v. Meyer, 1949, 228 Minn. 286, 37 N.W.2d 3 (the Minnesota Youth Conservation Act, M.S.A. § 242.01 et seq. held constitutional); State v. Monahan, 1954, 15 N.J. 34, 104 A.2d 21, 48 A.L.R.2d 641;

And it seems fundamental to this Court, as it did to Chief Judge Laws, that this disregard is warranted only if proper facilities are, in fact, furnished.

"Unless the institution is one whose primary concern is the individual's moral and physical wellbeing, unless its facilities are intended for and adapted to guidance, care, education and training rather than punishment, unless its supervision is that of a guardian, not that of a prison guard or jailor, it seems clear a commitment to such institution is by reason of conviction of crime and cannot withstand an assault for violation of fundamental Constitutional safeguards." White v. Reid, 125 F.Supp. at page 650.

Clearly, Congress could not permit the Attorney General to designate the District of Columbia Jail as the institution to send those found "involved" [5] by the Juvenile Court. If it could not be done initially, it should not be permissible by transfer, or justified because of the occurrence of a parole.[6] In no one of these instances has the child ever been protected by the full mantle of constitutional safeguards at the proceedings which resulted in the deprivation of his liberty. To put such a child in "a place for [the] punishment of crimes" whose "customary occupants are persons convicted of crime or awaiting trial for crime" would,

therefore, raise a serious constitutional question.[7]

18 U.S.C. § 4082 reads:

"Persons convicted of an offense against the United States shall be committed, for such terms of imprisonment as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinement where the sentences shall be served.

"The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the Federal Government or otherwise, or whether within or without the judicial district in which the person was convicted.

"The Attorney General may order any inmate transferred from one institution to another.

"The authority conferred upon the Attorney General by this section shall extend to all persons committed to the National Training School for Boys."

This is the only statutory authority which would appear to authorize the Attorney General's Board of Parole to use the Jail as a place of detention pending a parole violation hearing. Since "it is a cardinal principle" that statutes be construed so as to avoid constitutional doubts,[8] the Court concludes that the

---

People v. Lewis, 1932, 260 N.Y. 171, 183 N.E. 353, 86 A.L.R. 1001; Annotation, "Applicability of rules of evidence in juvenile delinquency proceeding", 43 A.L.R.2d 1128 (1955); but see also Shioutakon v. District of Columbia, 1956, 98 U.S.App.D.C. 371, 236 F.2d 666, annotated at 60 A.L.R.2d 691 (1958).

5. The euphemism for "guilty" in the Juvenile Court.

6. Indeed, a boy who has been paroled has presumably shown some potential for leading a law-abiding life. The certificate of juvenile parole, issued by the United States Board of Parole, Youth Corrections Division, reads on its face that "there is a reasonable probability that

said juvenile Will Remain at Liberty Without Violating the Laws." To put him in jail after such a finding, and *before* any contrary adjudication, would, therefore, seem particularly inappropriate.

7. Benton v. Reid, 1956, 98 U.S.App.D.C. 27, 29, 231 F.2d 780, 782 (D.C.Code, § 6–119a does not authorize the detention of a tubercular in the jail hospital; to construe the statute otherwise would raise "grave constitutional questions"); and see Judge Smith's enlightening discussion in United States v. Hegstrom, D.C.D.Conn.1959, 178 F.Supp. 17.

8. Crowell v. Benson, 1932, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598.

last sentence of § 4082 does not authorize the detention of a parolee from the National Training School at *any* institution designated by the Attorney General but does authorize detention only at the National Training School or an institution with substantially similar facilities.[9]

The Court adds that it has carefully considered the legislative history of 18 U.S.C. § 4082 and fully appreciates that the last sentence of this provision was added by Congress[10] to fill the hiatus created by the Court of Appeals' holding in Huff v. O'Bryant, 1941, 74 App.D.C. 19, 121 F.2d 890 that the Attorney General lacked the power to transfer an inmate from the National Training School for Boys to the Lorton Reformatory because "[t]he term of commitment, the nature of commitment, and the place of commitment, within the statutory limitations, are all within the exclusive discretion of the Juvenile Court." 74 App.D.C. at page 20, 121 F.2d at page 891. This Court cannot conclude, however, that Congress successfully met the problem of what to do with National Training School youths too old or too unruly for that institution, by adding this sentence to § 4082.[11] The Lorton Reformatory or the District of Columbia Jail not being the answer, attention might be directed to the need for a new and suitable institution.

Petitioner is discharged from custody unless transferred forthwith to the National Training School for Boys, or an institution with substantially similar facilities, pending the outcome of the hearing before the Youth Correction Division of the United States Board of Parole.

---

9. And see Cogdell v. Reid, D.C.1959, 183 F.Supp. 102, opinion by McGuire, J.

The Court notes that the Federal Correctional Institutions under the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq. were not considered by Chief Judge Laws as permissible places of detention. See the second White v. Reid case, D.C.D.C.1954, 126 F.Supp. 867.

---

10. Act of October 21, 1941, 55 Stat. 743.

11. Cf. Clay v. Reid, D.C.D.C.1959, 173 F. Supp. 667, appeal dismissed, 1959, 106 U.S.App.D.C. 298, 272 F.2d 527 (opinion by Holtzoff, J.).