THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LAWRENCE ADELBERT JACKSON, Appellant.

Third Department, December 27, 1963.

*Donald L. Slater* for appellant.

*Leslie E. Briggs, District Attorney,* for respondent.

BERGAN, P. J.   Defendant was convicted in Cortland County in 1951 of carnal abuse of a child between the ages of 10 and 16 years, as a felony, and was sentenced to an indeterminate term of one-day-to-life under one of the alternatives set forth in section 483-b of the Penal Law.  After more than 11 years in prison, defendant succeeded in having that sentence vacated. He was resentenced on January 4, 1963 in the Cortland County Court, again to one-day-to-life.

This is a direct appeal from the last sentence and it raises the question whether the term of one-day-to-life should have been imposed in this case or whether the alternative provisions of section 483-b of the Penal Law authorizing imprisonment for a maximum of 10 years ought to be invoked.

The People properly point out on this appeal that the one-day-to-life sentence for sex offenses was evolved as part of a progressive method enacted in 1950 of treating certain offenders. The amending and implementing statute (L. 1950, ch. 525) was entitled '' An act to amend the mental hygiene law, the correction law, the penal law and the code of criminal procedure, in relation to the sentence, study, diagnosis and treatment of persons convicted of certain crimes.''

The statute provided for psychiatric and psychological services for the Correction Department and the Division of Parole to be furnished by the Department of Mental Hygiene and for the enlargement of services in existing psychiatric and diagnostic clinics in penal institutions.  It provided for the new kind of sentence of one-day-to-life for certain sex offenders and vested in the Division of Parole broad authority to release such prisoners at any time after sentence.

The enactment of the statute was on the recommendation of the Governor to the Legislature on March 15, 1950 and was based on a comprehensive examination and report by a committee under whose supervision an intensive study of 102 sex offenders then confined in Sing Sing Prison had been conducted.  (N. Y. Legis. Doc., 1950, No. 56, p. 12.)

The committee consisted of the Commissioners of Correction and of Mental Hygiene, the Chairman of the Board of Parole and other leading figures in this field.  The studies resulted in the recognition of several main categories of sex offenders.

classified from the viewpoint of possibility of treatment in penal institutions.

One group was described as predisposed to crimes of violence, likely to commit new attacks if released, and not amenable to treatment by present known methods. Another group was described as unsuitable for treatment at present because of personality make-up, age, or alcoholism and who would be likely to continue, if released, to be a danger to public morals and to women and children.

A third group was recognized as amenable to treatment " with a good prospect of improvement before release ". This group constituted almost 50% of those studied. A last group was described as one which could be released on parole and treated on an outpatient basis (N. Y. Legis. Doc., 1950, No. 56, p. 23).

The most important of several recommendations of the committee which were incorporated in the statute of 1950 was the entirely new kind of sentence having marked flexibility in detention. As an essential concomitant to this type of sentence, however, this recommendation was made by the committee: " We recommend further that, whenever an offender shall be sentenced to such a term of from one day to life, the law shall impose upon the Department of Mental Hygiene, the Department of Correction and the Board of Parole the solemn duty of giving his case prompt and intensive study, to be followed where feasible by therapeutic treatment, to the end that such offender may be rehabilitated and released whenever it may appear that he is a good risk on parole. When serving under this form of sentence, it should be required that a prisoner receive thorough psychiatric examination not less than once every two years, and consideration by the Parole Board " (p. 44).

It was envisioned, therefore, as the title of the statute itself suggests, that treatment was an integral and essential part of a program to be followed in the penal system. Where the offender could be treated with some reasonable chance of improvement, it was contemplated that under a sentence so flexible that it might last for his natural life, he would be able to receive adequate treatment and would be discharged if improved to the extent it would be safe to release him.

As a necessary concomitant of this public policy, of course, it was realized that some offenders would not yield to any treatment and that when such cases were clearly identified and professionally evaluated, it would be expected that the dangerous offenders be held until the situation changed. Sometimes this would be for their whole lives. The reason for this was not

because life imprisonment was believed a just treatment, but because no other reasonably safe alternative could be found.

It was not contemplated that an offender be held for many years without treatment and without some sound professional basis for believing that during all of this period it would be unsafe to release him. Both the statute and the report disclose that it was the intention of the proponents and framers of the plan that periodic examinations be made of all prisoners serving under this kind of sentence.

What is more important is that it was contemplated that if the offender's condition was of a type which would yield to psychiatric treatment or other psychological or physical techniques that these would be given in the prison.

The primary responsibility for the effectiveness of such a program as this is, of course, with the administrative and legislative officers of the State; but the judicial branch, too, has a direct responsibility, for it is clear that the choice of this alternative treatment is by law made a matter of discretion with the sentencing Judge, and, on appeal, with the appellate court reviewing the sentencing Judge. This judicial discretion should be exercised in the light of the actual experience with the program.

Administrative and other difficulties seem to have beset the operation of the statute within the prisons. One was the difficulty in recruiting psychiatrists and other trained technicians to work in prison and the constant shortage of personnel. (N. Y. Legis. Doc., 1953, No. 82.) In 1955 the psychiatric clinic at Sing Sing Prison was closed after having functioned for more than four years. (N. Y. Legis. Doc., 1956, No. 84.)

Appellant contends, and it has not been disputed by the People, that in the whole period of over 11 years he spent in prison he received no psychiatric treatment. Nor is there any proof that he would not respond to psychiatric treatment if given; or that he would be dangerous if released. Reports of examinations made of him in prison show entirely superficial judgments.

No clear-cut expression of competent psychiatric opinion is in the record as to what risks would be involved in his release without medical treatment and what risks would be involved with medical treatment. It seems clear that the sentence to be imposed in this case requires an informed judgment in these areas.

The Judge on resentence had defendant examined by two psychiatrists in pursuance of section 2189-a of the Penal Law, but this routine and conventional examination did not touch

upon the essential nature of the problem which faced the court in this situation.

The report merely advised the Judge that the psychiatrists found no frank evidence of psychosis. They concluded that he did not " suffer from such degree of idiocy, imbecility or insanity as to be incapable of understanding the charge, the proceedings, or of assisting in his defense." This does not help on this kind of a sentence. There should be an examination to determine whether defendant presents a probable behavior pattern which would render it dangerous to release him now; and if it does, whether such behavior problem can be favorably affected by custodial medical treatment..

The sentence to be imposed would depend on the fully-implemented answers to these questions. Where a continuance of imprisonment beyond the normal maximum stated elsewhere for the crime by the Penal Law is based on an expectation of improvement by treatment, the sentencing Judge should be reasonably certain that the treatment will be given. We will retain jurisdiction of the question of sentence until the further psychiatric reports to be directed by our order are returned.

A further point of law made by defendant on appeal is that this offense became a felony rather than a misdemeanor within section 483-b of the Penal Law only if the defendant had been previously " convicted " of a similar crime or certain others not here pertinent in a court of criminal jurisdiction. In defendant's case, the previous " convictions " on the basis of which he was here charged with felony were each in the Children's Court of Cortland County for endangering the morals of a child, charged as misdemeanors.

This offense is a misdemeanor of which the Children's Court had jurisdiction. (Children's Ct. Act, § 6, subd. 4.) It is not disputed that the procedural provisions of that statute were followed (Children's Ct. Act, §§ 14, 15). The convictions met the test of section 483-b of the Penal Law — that the offense with which appellant was charged in this prosecution would be a felony where he had been " previously convicted " of a similar crime.

Decision in that part of the appeal addressed to the sentence should be withheld until a psychiatric study has been made relating to the specific problems on sentence discussed in this opinion, and such direction and the appropriate provisions as to affirmance on other questions raised should be contained in an order to be settled on notice.

GIBSON, HERLIHY, REYNOLDS and TAYLOR, JJ., concur.

Decision, in that part of the appeal addressed to the sentence, withheld until a psychiatric study has been made relating to the specific problems on sentence discussed in the opinion herein, and such direction, and the appropriate provisions as to affirmance on other questions raised, should be contained in an order to be settled on notice.