Maurice I. MILLARD, Appellant,

v.

Dale C. CAMERON, Superintendent, Saint Elizabeths Hospital, Appellee.

No. 19584.

United States Court of Appeals District of Columbia Circuit.

Argued March 22, 1966.

Decided Oct. 10, 1966.

Mr. David Carliner, Washington, D. C. (appointed by the District Court), with whom Messrs. Jack Wasserman and James Siena, Washington, D. C., were on the brief, for appellant.

Miss Carol Garfiel, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Mr. Max Frescoln, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and WRIGHT, Circuit Judge.

BAZELON, Chief Judge:

In this habeas corpus case appellant attacks his confinement in Saint Elizabeths Hospital. The Municipal Court, now the Court of General Sessions, committed him as a "sexual psychopath" [1] on October 17, 1962. He appeals from the District Court's denial of his habeas corpus petition, on the grounds that the court erred in: (1) finding that his commitment, based solely on the "boiler-plate" report of two psychiatrists, was procedurally valid; (2) finding that he is "dangerous" within the meaning of the sexual psychopath statute; and (3) failing to find that the absence of psychiatric treatment in the Hospital requires relief.

I

The commitment proceeding against appellant in the Municipal Court was initiated by the District of Columbia Corporation Counsel, after appellant had pled guilty to indecent exposure and before sentencing,[2] by filing a statement that:

On September 1, 1962, the defendant was seen by several people, at about 11:00 a. m., to expose himself

1. D.C.Code §§ 22–3503 to 22–3509 (1961).  2. D.C.Code § 22–3504 (1961).

to the public. [One woman] * * * complains that she had seen him expose himself to her on several occasions. Defendant was masturbating. Also, several females in the neighborhood have seen him expose himself. Defendant admits he was exposing himself.

Defendant was charged with Indecent Exposure on June 22, 1962. He also has a record for disorderly conduct.

Due to the foregoing statement, defendant appears to warrant examination under the above-cited law.

The Municipal Court then ordered two psychiatrists from the District of Columbia General Hospital to examine appellant in the District of Columbia Jail,[3] where he was confined because he could not make bond. The psychiatrists reported only that they examined appellant and "as a result of the examination * * arrived at the conclusion that [he] is a sexual psychopath as defined in the Sexual Psychopath Statute. It is recommended that * * * [he] be committed to a mental institution for proper care and treatment for his condition." The only other entry on the record of commitment is a simple commitment order of the Municipal Court with a recitation that "upon the testimony and evidence adduced, the defendant * * * is by the Court found to be a sexual psychopath. * * * ".

In this habeas corpus hearing, appellant's counsel made a proffer that appellant, if permitted to testify, would state that he "was ordered committed to St. Elizabeths Hospital based on the affidavits only of psychiatrists; there was no testimony taken in court; all that was had was a bench conference between the lawyers involved." Accepting this as true, the District Court found that appellant's commitment was procedurally valid because of D.C.Code § 22–3506, which provides that each psychiatrist who examines a person pursuant to the Sexual Psychopath Statute "shall file a written report of the examination, which shall include a statement of his conclusion as to whether the patient is a sexual psychopath." The District Court held that the conclusory statement in the psychiatrists' report was sufficient.

■■■ This was error. Though the Sexual Psychopath Statute requires the psychiatric report to "include" a legal conclusion, it also requires a hearing in which the psychiatrists can be examined and cross-examined. When they have concluded that an individual is a "sexual psychopath," the court is to "determine whether or not the patient is a sexual psychopath" upon "the evidence introduced at a hearing held for that purpose."[4] A jury may be demanded, and "[t]he rules of evidence applicable in judicial proceedings in the court shall be applicable."[5] The patient has a right to counsel at all stages of the proceeding,[6] and counsel has the "right to inspect the reports of the examination of the patient."[7] A judicial determination based on a psychiatric examination must be an informed one,[8] particularly where,

---

3. D.C.Code § 22–3506 (1961).

4. D.C.Code § 22–3508 (1961).

5. Ibid.

6. D.C.Code § 22–3505 (1961).

7. D.C.Code § 22–3506(b) (1961).

8. Cf. Holloway v. United States, 119 U.S. App.D.C. 396, 343 F.2d 265 (1964); Rollerson v. United States, 119 U.S.App.D.C. 400, 343 F.2d 269 (1964). See LINDMAN & McINTYRE, THE MENTALLY DISABLED AND THE LAW 309 (1961):

The possibility of a life sentence demands that all procedural safeguards be taken [in sexual psychopath proceedings]. [When there is no hearing] * * * there is no opportunity to challenge the competency or findings of the examiners (confront your accusers), and there is no opportunity for the defendant to present expert witnesses on his own behalf. The lack of these procedural safeguards is especially relevant in light of the controversy within the medical profession itself.

For criticism of the common use of boilerplate reports in this area see Comment, Sexual Psychopathy—A Legal Labyrinth of Medicine, Morals and Mythology, 36 NEB.L.REV. 320, 337 (1957).

as here, the result is indefinite confinement.[9] In a related context, we said,

> [T]he terms "report" or "certificate" * * * must be construed compliably with the need for judicial determination. * * * Thus it would be necessary for the trial judge to inquire of the examining doctors the basis for their conclusions. [Holloway v. United States, 119 U.S.App.D.C. 396, 399, 343 F.2d 265, 268 (1965)]

The Municipal Court's statement that it acted upon "the testimony and evidence adduced" does not provide adequate assurance that the statute was complied with and that an informed judgment was made.

We remand to the District Court with directions to take the testimony proffered by appellant and proceed with the hearing. It will be open to the government to show that the required evidentiary hearing was held by the Municipal Court or was "intelligently waived."[10]

## II

The statute defines a sexual psychopath as "a person, not insane, who by a course of repeated misconduct in sexual matters has evidenced such lack of power to control his sexual impulses as to be dangerous to other persons because he is likely to attack or otherwise inflict injury, loss, pain, or other evil on the objects of his desire."[11] This definition substantially follows the Minnesota Supreme Court's construction of the state's sexual psychopath act:

> [The Act] is intended to include those persons who, by an habitual course of

misconduct in sexual matters, have evidenced an utter lack of power to control their sexual impulses and who, as a result, are likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire. It would not be reasonable to apply the provisions of the statute to every person guilty of sexual misconduct nor even to persons having strong sexual propensities. Such a definition would not only make the act impracticable of enforcement and, perhaps, unconstitutional in its application, but would also be an unwarranted departure from the accepted meaning of the words defined.[12]

The United States Supreme Court held that the Minnesota statute so construed was not "too vague and indefinite to constitute valid legislation."[13] "These underlying conditions, calling for evidence of past conduct pointing to probable consequences, are as susceptible of proof as many of the criteria constantly applied in prosecutions for crime."[14]

A defendant whose conduct shows danger of the named evils may be committed for treatment instead of, or in addition to, being punished for his acts of exhibitionism.[15] If not, he may only be punished. Though the "likely * * * injury, loss, pain, or other evil" may be either physical or psychological, we think it must involve conduct that is not merely repulsive or repugnant, but that has a serious effect on the viewer.[16] Otherwise the definition of sexual psychopath might be "too vague and indefinite to

9. We need not decide whether or not constitutional considerations would require a hearing in the absence of the statutory hearing requirement. Cf. Barry v. Hall, 68 U.S.App.D.C. 350, 353, 98 F.2d 222, 225 (1938).

10. See Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

11. D.C.Code § 22–3503 (1961).

12. State of Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 273, 60 S. Ct. 523, 525, 84 L.Ed. 744 (1940). See H.R.Rep. No. 1757, 80th Cong., 2d Sess. (1948).

13. Minnesota v. Probate Court, supra note 12, 309 U.S. at 274, 60 S.Ct. at 526.

14. Id. at 274, 60 S.Ct. 526.

15. D.C.Code § 22–3510 requires that the criminal proceedings, in this case sentencing, be stayed until discharge from Saint Elizabeths Hospital.

16. See generally Goldstein & Katz, Dangerousness and Mental Illness: Some Observations on the Decision to Release Persons Acquitted by Reason of Insanity, 70 Yale L.J. 225 (1960).

constitute valid legislation." [17]  Whether conduct is "likely" to have a serious effect on potential viewers may depend, for example, on their age and condition, the proximity and extent of the patient's exposures, and his accompanying gestures.  In the present case no "evidence of * * * probable consequences" [18] was presented.  On remand, expert and other testimony on this point may be presented.

### III

Much of the hearing below was addressed to appellant's contention that he was receiving no treatment.  The only expert witness, Dr. Dabney, the psychiatrist on appellant's ward, testified that "the important aspect of this man's treatment would have to. involve his wife."  He admitted, however, that appellant's wife had neither written nor visited him in the past year and showed a "lack of participation or interest." He said the Hospital, in order to develop appellant's initiative, was leaving it to him to persuade his wife to participate in treatment.  Appellant's counsel proffered the testimony of his wife that "she does not wish to continue the marital relationship with Mr. Millard" and that "she has not visited him in the Hospital, and she has no intention of visiting him in the Hospital or participate [sic] in the counselling program with the social worker."  The District judge and appellant's counsel then had the following exchange:

Court: Very well.  That is evidence. I am going to receive it.  However, it is not pertinent to what is before me.  I am leaving it in for your record, sir.  But I feel it is outside the scope of what I have here.

Counsel: It is in evidence?

Court: It is not evidence.  It goes to treatment.  My position is, notwithstanding your constitutional argu-ment, this court cannot run the hospital or tell people how their patients should be treated.  I realize you take a different position, that the incarceration is without any treatment over here and is punishment which is unconstitutional.

Counsel: That is correct.

Counsel later made another proffer that appellant would testify that "he receives no treatment whatever; that his time is spent in mopping floors; and eating and sitting around watching television all day long; that he has only the briefest and most casual interviews with the professional staff at St. Elizabeths Hospital. * * *"  The judge responded that he considered the purpose of the hearing to be only to determine whether appellant was still a sexual psychopath. He made no findings of fact on the alleged lack of treatment.

In Rouse v. Cameron, 125 U.S. App.D.C. ——, 373 F.2d 451 (1966), the issue of the right to treatment was presented in a habeas corpus proceeding brought by a person involuntarily committed after being. found not guilty by reason of insanity.  We considered (1) the statutory purpose of that commitment, namely, detention for treatment; (2) the constitutional problems raised when treatment is absent; and (3) the "right to treatment" provision of the Hospitalization of the Mentally Ill Act. D.C.Code § 21–562 (Supp. V, 1966).  We held that the petitioner was entitled to relief upon a showing that he was not receiving reasonably suitable and adequate treatment.  Lack of such treatment, we said, could not be justified by lack of staff or facilities.  We think the same principles apply to a person involuntarily committed to a public hospital as a sexual psychopath.

Indefinite commitment under the Sexual .Psychopath Law is "justi-

---

17. See LINDMAN & McINTYRE, *supra* note 8, at 305; Bowman & Rose, A Criticism of the Current Usage of the Term "Sexual Psychopath," 109 AM.J.PSYCHIATRY 177 (1952).

18. State of Minnesota v. Probate Court, *supra* note 12, 309.U.S. at 274, 60 S.Ct. 523.

fiable only upon a theory of therapeutic treatment." [19] Persons against whom proceedings under the statute are instituted are called "patients" because "the title essentially provides treatment rather than punishment." [20] The statute requires that the criminal sentence for sexual misconduct be withheld until after the patient's release. "Lack of treatment destroys any otherwise valid reason for differential consideration of the sexual psychopath." [21]

In Miller v. Overholser [22] we held that habeas corpus relief was available to one confined as a sexual psychopath, without treatment, in a ward for the "hopelessly insane." We said such confinement was "not authorized by the statute" [23] and that if the appellant's allegations were true, the District Court should order Saint Elizabeths "to transfer the appellant to a proper place in that institution for hospital treatment and to make a showing to that effect within a reasonable time." [24]

Appellant also is entitled to psychiatric care and treatment under the 1964 Hospitalization of the Mentally Ill Act. D.C.Code § 21–562 (Supp. V, 1966). A requisite to his commitment was a "lack of power to control his sexual impulses," [25] the purpose of his commitment is "treatment," [26] and a requisite to his release is recovery. [27] Although he is defined by the Sexual Psychopath Law as "a person, not insane," [28] the 1964 Act's provision for treatment applies to him as it did to the appellant in Rouse, supra. If on remand appellant's confinement is found to be otherwise valid, the District Court must inquire into his allegation of lack of treatment in accordance with the standards and procedures set forth in Rouse v. Cameron.

Reversed and remanded for further proceedings in accordance with this opinion.

WILBUR K. MILLER, Senior Circuit Judge, dissents.

19. Miller v. Overholser, 92 U.S.App.D.C. 110, 115, 206 F.2d 415, 419 (1953).

20. H.R.Rep. No. 1787, 80th Cong., 2d Sess. 5 (1948).

21. Lindman & McIntyre, supra note 8, at 308.

22. 92 U.S.App.D.C. 110, 206 F.2d 415 (1953).

23. Id. at 115, 206 F.2d at 419 (1953). Cf. Benton v. Reid, 98 U.S.App.D.C. 27, 231 F.2d 780 (1956).

24. Id. at 116, 206 F.2d at 421. See People ex rel. Kaganovitch v. Wilkins, 23 A.D.2d 178, 259 N.Y.S.2d 462 (1965); People v. Jackson, 20 A.D.2d 170, 245 N.Y.S.2d 534 (1963); Commonwealth v. Hogan, 341 Mass. 372, 170 N.E.2d 327 (1960).

25. D.C.Code § 22–3503 (1961).

26. Miller v. Overholser, supra note 22.

27. D.C.Code § 22–3509 (1961).

28. D.C.Code § 22–3503 (1961).