**Granville FULLER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 20663.**

United States Court of Appeals District of Columbia Circuit.

Argued June 5, 1967.

Decided Dec. 14, 1967.

---

Mr. John T. Tansey, Washington, D. C., with whom Mr. Cecil A. Beasley, Jr., Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. Arthur L. Burnett, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Allan M. Palmer, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge and LEVENTHAL, Circuit Judge.

## PER CURIAM:

Appellant was convicted of sexually violating the person of a child five years of age, a crime defined in D.C.Code § 22–3501. His appeal raises questions whether the court prejudicially erred in failing sua sponte to order a mental examination of appellant to determine his competency to stand trial, and also whether there was a miscarriage of justice in the failure to follow the civil commitment procedures of the Miller Act, also known as the Sexual Psychopath Act, D.C.Code § 22–3504, instead of pursuing the usual criminal procedures. These questions arise in the context of a factual situation which requires their serious consideration, though we imply no criticism of the action of the trial judge as the matter appeared to him.

Appellant was 59 years of age when the case arose. He is blind, and has a record which is very pertinent to the course which the law should pursue in this case. This record definitely indicates his dangerous propensity toward conduct similar to that here involved, especially when he resorts to drinking, as he often has done. Moreover, the Chief of the Legal Psychiatric Division on October 31, 1966 gave the opinion appellant suffered from (1) passive-aggressive personality and (2) chronic brain syndrome associated with arteriosclerosis and/or alcoholism with behavioral disturbance, with definite evidence of organic brain damage and marked sexual problems likely to be repetitive should he have access to either alcohol or children.

■ We think it was error in the circumstances of this case for the trial judge to proceed to sentencing for this criminal offense, upon the receipt of that

report, without at least a hearing on the issue of competency. The Chief of the Legal Psychiatric Services did not express an opinion on that subject, but he had not been asked to do so. The opinion he did express raised enough doubt of competency for criminal sentencing to call for a hearing.

■ On our remand for a competency hearing the judge will also be authorized to receive, or to direct the prosecutor to file, a statement looking toward the application of the Miller Act, relating to sexual psychopaths. D.C.Code § 22–3504 (c). The hearing on remand can be conducted even in the absence of a formal statement so as to embrace the issue whether civil commitment under that act best serves the interest of society.

The hearing on remand should also embrace the issue of the possibility of lack of competency at trial, even assuming that the conditions prior to the October 31, 1966 report did not compel such a hearing. Since here there presumably will be available the notes of the Chief of Legal Psychiatric Services made at a time shortly after trial, in a frame of reference that is related to, though analytically distinguished from, the issue of competency, the retroactive problem might be avoided. If not, a new trial would be required, as in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L. Ed.2d 824.

■ In the interest of justice, and sound administration, the inquiry at the hearing should also embrace appellant's mental condition at the time of the offense, since this too may relate to the issue whether a new trial should be ordered, what kind of judgment and/or sentence is appropriate, and what kind of disposition should be made of this appellant.

Accordingly, with the benefit of the hearing, and appellant's record, particularly in sexual matters, the District Court shall in the exercise of a sound discretion decide what disposition of the case seems appropriate. The District Court in the exercise of a like discretion may decide to reinstate the sentence hereby vacated cr to modify that sentence, or it may decide to set aside the conviction and order a new trial, with opportunity to raise questions of competency and the defense of insanity. And as already noted the setting aside of the sentence will afford the District Court and the prosecutor, if so advised, an opportunity to proceed under the civil commitment provisions of the Miller Act, see D.C.Code § 22–3504. We do not preclude consideration by the District Court of any disposition not specifically mentioned by us which should occur to the court or be brought to the court's attention by counsel.[1]

It is so ordered.

BAZELON, Chief Judge (concurring):

I join in the court's opinion, and would only add this comment.

The District Court imposed a prison sentence, a disposition not designed to provide Fuller treatment which would improve his condition. Therefore, he is likely to renew his dangerous behavior after his release from imprisonment, with another conviction and further imprisonment to follow. Neither the public nor Fuller would be benefited. A program of care and treatment, on the other hand, would constitute a necessary first step in any bona fide effort to give him and society some hope of controlling his behavior.

In the present case such a program must confront the reality that Fuller's behavioral abnormalities are probably due to organic brain damage which may be irreversible. If it were, commitment to a mental institution would be equivalent to a life sentence. This course should be followed, if at all, only after all alternatives have been thoroughly explored and exhausted. The psychiatrist

1. This might include civil commitment under the Hospitalization of the Mentally Ill Act, D.C. Code § 21–501 et seq., should the conviction be set aside.

reported that Fuller's sexual misconduct stems from exposure to the combination of alcohol and children. If so, his age and blindness suggest that some form of supervision or less-than-total deprivation of liberty might provide reasonable protection to the community.

It is true that the sexual psychopath law provides that "if the patient is determined to be a sexual psychopath, the court shall commit him to Saint Elizabeths Hospital * * *."[1] But since other alternatives must be explored in civil commitment proceeding under the Hospitalization of the Mentally Ill Act,[2] we may not assume that Congress intended to withhold such consideration from persons committed as "sexual psychopaths."[3] Otherwise, serious questions of equal protection would arise.[4] On remand, therefore, I think the District Court may resort to absolute confinement in Saint Elizabeths Hospital, whether under the sexual psychopath law or the Hospitalization of the Mentally Ill Act,[5] only after it has determined that no satisfactory alternative exists.[6]

1. D.C. Code § 22–3508 (1967).

2. D.C. Code § 21–545(b) (1967); Lake v. Cameron, 124 U.S.App.D.C. 264, 364 F. 2d 657 (1966).

3. Proceedings under the sexual psychopath law are essentially equivalent to civil commitment proceedings. Millard v. Cameron, 125 U.S.App.D.C. 383, 373 F.2d 468 (1966); Miller v. Overholser, 92 U.S. App.D.C. 110, 206 F.2d 415 (1953). A finding of dangerousness is a prerequisite to commitment under both Acts (though under the Hospitalization of the Mentally Ill Act the person need not necessarily be dangerous to others). *Compare* D.C. Code § 22–3503(1) *with* D.C. Code § 21–545(b). Commitment as a sexual psychopath does not necessarily occur in the course of a criminal proceeding. D.C. Code § 22–3504(a).

4. Baxstrom v. Herold, 383 U.S. 107 (1966); Huebner v. State, 33 Wis.2d 505, 147 N.W. 2d 646 (1967); People ex rel. Smith v. Jackson, 37 Ill.2d 379, 227 N.E.2d 366, 369–371 (1967) (Schaefer, J., dissenting); see Rouse v. Cameron, 125 U.S. App.D.C. 366, 367–371, 373 F.2d 451, 452–456 (1967); Cameron v. Mullen, 127 U.S.App.D.C. ——, 387 F.2d 193 (March 2, 1967).

5. According to the presentence report, the psychiatrist found that Fuller has an I.Q. of 86 (dull normal); that he has a long-standing personality disorder (passive-aggressive personality) with "marked sexual problems among others;" that there is "definite evidence" of organic brain damage resulting from arteriosclerosis and/or alcoholism; and that he would be dangerous if exposed to alcohol and children. Without some indication of his reasoning, and some explanation of the diagnostic labels, I find incomprehensible the psychiatrist's conclusion that Fuller is not "commitable to a mental hospital against his will." The Hospitalization of the Mentally Ill Act provides for involuntary commitment of mentally ill persons who are likely to be dangerous to themselves or others. D.C. Code §§ 21–501, 21–545(b).

6. In fashioning an individual program the court may need information and assistance from the various agencies of the District of Columbia Government. See Lake v. Cameron, 124 U.S.App.D.C. 264, 268–69, 364 F.2d 657, 661–662 (1966). If requested, appropriate District Government officials could, no doubt, coordinate the efforts of its departments in making available the necessary services and providing the court with relevant information.