Sammie **JACKSON**, Jr., Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 21327.

United States Court of Appeals District of Columbia Circuit.

Argued June 17, 1968.

Decided Feb. 3, 1969.

Petition for Rehearing Denied Aug. 6, 1969.

Mr. Joseph Paull, Washington, D. C. (appointed by this court) for appellant.

Mr. Robert A. Ackerman, Attorney, Department of Justice, with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker, Harold J. Sullivan and Miss Carol Garfiel, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

BAZELON, Chief Judge:

The appellant raises a raft of objections to his conviction on one count of robbery, two counts of assault with a dangerous weapon, and one count of carrying a concealed weapon. We find each of these claims to be without merit and accordingly affirm.

I

The appellant first argues that the trial court erred in ordering sua sponte that the counts based on each of three robberies allegedly performed by the appellant should be severed. At trial, counsel moved that the entire indictment should be dismissed because of misjoinder. Rule 14, however, clearly authorized severance as an alternative to dismissal of the indictment, and in this appeal Jackson argues instead that he was in some way prejudiced by being forced to go to trial on the four counts related to one robbery rather than on all the nine counts relating to the three robberies. This claimed right to proceed to trial on the full indictment was not, in the first place, presented to the trial court. In the second place, the appellant does not suggest how his defense might have been altered had he been allowed to go to trial on all nine counts. We must therefore reject this untimely claim supported neither by precedent nor by any showing of prejudice.

Jackson's next claim is that the trial court should have appointed new defense counsel when the appellant claimed immediately prior to the trial that there was deep antipathy between him and his court-appointed attorney. The decision whether friction between counsel and client justifies appointment of new counsel is entrusted primarily to the discretion of the trial court. Smith v. United States, 122 U.S.App.D.C. 300, 307, 353 F.2d 838, 845 (1965); Cleveland v. United States, 116 U.S.App.D.C. 188, 322 F.2d 401, cert. denied, 375 U.S. 884, 84 S.Ct. 157, 11 L.Ed.2d 114 (1963). Among the factors to be considered is the timeliness of the request. Lee v. United States, 98 U.S.App.D.C. 272, 235 F.2d 219 (1956). Although the request here was not made until the outset of trial, the trial judge inquired into the causes of the appellant's dissatisfaction with his attorney, heard from the defense counsel, and denied the motion. We are unable to conclude that he abused his discretion in so doing.

The appellant next contends that the trial court should sua sponte have ordered a mental examination of his competency to stand trial. He argues that the pattern of antisocial conduct for which he was indicted—three robberies within a month—together with his abrasive relations with counsel raised such substantial doubt concerning his competency as to require such an examination. We are, again, unable to agree. While in certain circumstances a trial judge may in the exercise of his discretion be required to follow such a course, see Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812 (en banc), cert. denied, 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965), this was not such a case. There was no evidence in the appellant's prior record to suggest mental illness. No claim on this score was presented by counsel. We are not ready to establish a per se rule requiring a mental examination for all defendants charged with multiple offenses. Time and further knowledge, however, may teach us that repeated acts of antisocial behavior do raise such a suspicion of mental or emotional disturbance as to require examination.

## II

The appellant also contends, although the issue was not raised at trial, that the evidence seized at the time of his apprehension was improperly admitted because his arrest was not based upon probable cause. The resolution of this claim, as is usual in such cases, requires a detailed examination of the facts relating to the challenged search and seizure.

Early in the evening of January 25, 1967, by the testimony of two employees, a man entered the Morgan Pharmacy in the Georgetown section of Washington. After asking for some brown mesh hose, and being informed that the store had none, he left. Several minutes later, the same man re-entered the store and robbed it at gunpoint of about $1700 in cash and some checks. The police, called to the scene, mounted an intensive search of the P Street Beach area along Rock Creek, where they suspected the robber might be hiding. Unsuccessful, they withdrew after about half an hour and staked out two Canine Corps officers with their dogs, hoping that the robber would come out of the wooded area. Officer Hand testified that shortly later he saw a man emerge from the bushes about one hundred yards away. Not wishing to excite his dog by running, he attempted to walk up to the suspect. Unable to catch up, he shouted, "Halt, police." When the man turned, then started to run, the officer released his dog with the command, "Get him." The dog hurtled toward the suspect, striking him high on the body. A second dog, released by Officer Kager, struck the man about the same time. Officer Kager, attempting to "get [his] hands on the man," saw a flash in his face and heard a pistol shot. The man rolled down the bank toward Rock Creek. The dogs, pursuing him, stopped at the mouth of a storm sewer. Officer Kager, afraid that his dog would be hurt, reached out to try to pull his dog back. A shot was fired from within the sewer. Officer Kager returned two shots into the opening, and his dog rushed in. Shortly thereafter, the appellant emerged with his hands raised. The police later found a holster, a revolver with two empty chambers, an expended shell casing, and $31 in small bills within the sewer. The remainder of the money stolen was found in a paper bag stuffed inside the appellant's trousers.

The appellant would cast the issue in terms of whether the police officers had probable cause to arrest him at the time they released their dogs. If this were the question, a strong argument could be made that probable cause did in fact exist. The police had just completed an intensive search of the area from which the suspect emerged. It was wintertime, when the P Street Beach would normally be all but deserted at evening. When a man came out of the bushes, the police had some reason to believe that he

had been hiding there, and that a man who had been hiding was likely their robber. This was not simply a case where an unidentified person was seen walking a public street shortly after a crime. Moreover, the flight of the man when Officer Hand yelled, "Halt, Police," while ambiguous, could provide a "reasonable, cautious and prudent peace officer" additional justification to believe that the man was the robber. *See* Sibron v. New York, 392 U.S. 40, 66, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Green v. United States, 104 U.S.App.D. C. 23, 25, 259 F.2d 180, 182 (1958), cert. denied, 359 U.S. 917, 79 S.Ct. 594, 3 L. Ed.2d 578 (1959).

█ We do not find it necessary to decide, however, whether the police had probable cause to arrest the suspect at the time the dogs were released. The revolver, holster and money were not seized then, but only after the appellant had fired two shots, apparently at Officer Kager. Whether or not the release of the police dogs was justifiable, the appellant's use of a pistol to resist was not reasonable. While the police could not rely upon these subsequent events to justify their initial efforts to apprehend the appellant, *see* Sibron v. New York, 392 U.S. 40, 63, 88 S.Ct. 1889 (1968); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), the gunplay itself provided probable cause to arrest the suspect for assault with a dangerous weapon, an offense for which he was in fact convicted.

### III

After the apprehension of the appellant, during the course of which he was wounded in the leg by one of the shots fired by Officer Kager, the employees working in the Morgan Pharmacy at the time of the robbery were taken to the hospital where the appellant was being treated. Although taken to the hospital together, the two witnesses who identified the appellant at his trial indicated by their testimony that they were taken into his room individually. The appel-

lant was covered approximately to his chest by a sheet and, surrounded by police officers and hospital personnel, was the only candidate for identification. Both witnesses identified the appellant at the hospital. At trial, the first witness made only an in-court identification on direct examination; the out-of-court identification was raised by the defense on cross-examination. Presumably for tactical reasons, the Government attorney then brought out the hospital identification in his direct examination of the second witness.

█ We are loath to encourage, or tolerate, individual confrontations such as occurred here. "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). But such situations must be judged by the "totality of the circumstances surrounding it * * *." *Id.* This case presents a problem similar to that in *Stovall,* but with the roles of suspect and victim reversed. In *Stovall,* the victim of the assault had been stabbed 11 times, and "no one knew how long [she] might live." Since she was "the only person in the world who could possibly exonerate Stovall," the Supreme Court approved the hospital confrontation as "the only feasible procedure." *Id.*

In this case the suspect rather than the victim was wounded. There is no suggestion in the record that Jackson was likely to die. Indeed, aside from the fact that his wound required hospitalization, there is no indication in the record how serious the appellant's gunshot wound in the leg was. But it would seem that a lineup was at least not feasible that night. This Court has recognized the desirability of a prompt identification, while memories are still fresh. *See* Wright v. United States, 131 U.S.App.D.C. 279, 283 n. 24, 404 F.2d 1256, 1260 n. 24 (1968); Wise v. United States, 127 U.S.App.D.C. 279, 282, 383 F.2d 206, 209–210 (1967); Russell v.

**154**

United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, (1969).

██ In other circumstances a remand might be required to determine how serious Jackson's wounds were and whether a less suggestive confrontation could have been arranged within a few days. But the combination of several factors persuade the Court that the suggestive circumstances surrounding the confrontation were not so likely to lead to a misidentification as to require further proceedings. The victims of the robbery saw the suspect individually. They both testified that before the confrontation the police had told them neither that the suspect had been arrested near the Morgan Pharmacy, nor that almost $1700, apparently the fruits of the crime, had been found on his person. Moreover, both victims had had an excellent opportunity to observe the robber under good lighting conditions, both during the crime and when he entered the store for the first time. Indeed, one employee had specifically remarked upon the robber's "weird" appearance after he had left the store for the first time and before the crime. Finally, both victims had given descriptions of the robber to the police immediately after the crime. In view of all these factors, we find no violation of due process confrontation arranged under the necessitous circumstances here. *See* Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968); Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968) (en banc).

IV

██ The appellant raises three additional contentions that can be briefly disposed of. The first is that there was inadequate evidence to support his conviction for assault with a dangerous weapon upon police officer Kager. His theory is that the circumstances of his apprehension require the conclusion that his shots were fired not at the policeman but at the policedog. We do not agree. Officer Kager testified that when he first tried to "get [his] hands" on the suspect, there was a flash of fire and he heard a pistol shot. Immediately thereafter, a shot came from the storm sewer when the officer reached in front of the sewer opening in an attempt to pull his dog away from there. The jury might have concluded that the appellant reacted to and shot at only the policedog. But we are unprepared to hold that they could not also have concluded that one or both of the shots was directed at the officer.

██ The appellant next contends that the Government should have been compelled to elect between the charges of robbery and assault with a dangerous weapon upon employee Sugar. While conceding that an assault charge is not necessarily a lesser included offense of robbery, United States v. Bauer, 198 F. Supp. 753 (D.D.C.1961), he argues that under the circumstances of this case the former was clearly included within the latter.

██ There is a clear interest in preventing the state from punishing separately for technically distinct offenses arising out of the same transaction. However, the decisions of this Court have made it apparent that this goal is better pursued not by preventing the submission of the different charges to the jury, but by forbidding consecutive sentences in appropriate circumstances. *See* Fuller v. United States, 129 U.S.App. D.C. 53, 390 F.2d 468 (1968) (en banc); Irby v. United States, 129 U.S. App.D.C. 17, 20, 390 F.2d 432, 435 (1968) (en banc) (concurring opinion of Leventhal, C.J.). The difficulties of determining the appropriate circumstances are, however, formidable, as the decisions of this Court have also shown. There is first the difficulty of determining what constitutes a single transaction. And even if the temptation to invoke an atomistic conception of an act or transaction can be avoided, the question of whether there was a single criminal intent presents troubling problems. *See id.* (plurality, concurring and dissenting opinions). In this case the Government

argues that consecutive sentences for robbery and the assault upon employee Sugar were permissible because the crime of assault was complete when the appellant pointed his gun at Sugar, and at that point he could still have desisted from the robbery by leaving the money behind. The reasoning is that as long as the threat of additional punishment for robbery might exercise a deterrent effect in persuading some criminals to alter their criminal intent in mid-holdup, consecutive sentences are appropriate. But where the same intent underlies two offenses committed one upon another—although perhaps at technically distinct moments—we find it whimsical to suggest that the threat of additional punishment will provide meaningful deterrence in the interstitial period separating the offenses. We believe this rule to be consistent with the reasoning of this Court in *Irby*, since "the course of conduct" does not "[admit] of interruption and alteration in response to the deterrent influence of additional punishment." We think the robber here clearly had an intent to rob at the time he pointed the gun at employee Sugar. Since this is so, we decline to theorize that the threat of additional punishment might suddenly leap to his criminal mind and lead him to abandon his intent.

Were this simply a case where consecutive punishments were imposed for robbery and assault with a deadly weapon, therefore, we would have at the very least profound doubts whether the sentences could be upheld. In this case, however, the sentence for assault with a deadly weapon upon employee Sugar, while imposed consecutively with the sentence for robbery, was set to run concurrently with the sentence for assault with a dangerous weapon upon officer Kager. Since we found no infirmity with the conviction on that charge, we need not reach the first assault conviction. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943). Since the appellant was convicted of three other felonies, and has a previous record, we are unconvinced that

his sentence for assault upon employee Sugar is sufficiently likely to affect his opportunities for parole to require our examination of that sentence.

Finally, the appellant argues that the closing argument of the prosecutor was so inflammatory as to require reversal. The Government attorney did recite from President Kennedy's inaugural address, allude to the Fourth of July fireworks discharged just before trial as analogous to the gunplay in this case, and praise the services to humanity of the Canine Corps dogs. But while we approve of neither the quality nor the content of his rhetoric, we find nothing in his remarks at all likely to have influenced the jury's deliberations, particularly in view of the strong evidence against the appellant.

Affirmed.