107 N.J. Super. 128 (1969)
257 A.2d 377
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JONATHAN THOMAS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1969.
Decided October 7, 1969.
*129 Before Judges GOLDMANN, LEWIS and MATTHEWS.
Mrs. Miriam N. Span, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. VanNess, Public Defender, attorney; Mr. Arthur Penn, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. M. Richard Altman, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
*130 The opinion of the court was delivered by MATTHEWS, J.A.D.
Defendant was indicted for robbery (N.J.S.A. 2A:141-1), tried by a jury and found guilty, and thereafter sentenced to an indeterminate term at the Yardville Reformatory. This appeal followed.
On the evening of September 22, 1967 Mary Nolan entered the outer vestibule of her apartment house at 51-53 North Park Street, Orange, and rang the bell to her apartment. She heard a noise and looked behind her and there saw two men. One of the men grabbed her about the neck with a length of clothesline, and then both began to hit her about the face and head. Her handbag was taken, and the two individuals fled. The entire incident consumed a very short period of time.
Immediately after the attack Mary ran to a police station located at a short distance from the apartment house. As she approached the station house, she saw several officers standing in the driveway. She informed them that she had been mugged and they thereupon accompanied her in a patrol car to the scene of the incident. She directed them to the right-hand side of the apartment building and pointed to the direction where she had seen the two men flee. She remained in the patrol car while the three officers conducted a search of the area.
Detective Wells of the Orange Police Department testified that at approximately 10:40 P.M. Mrs. Nolan entered the driveway of police headquarters complaining that she had been mugged. She was holding her throat and her eye and lip were swollen. Wells then proceeded to 51-53 North Park Street, at the direction of Mrs. Nolan. In the rear of the building near the area of the garages he found a pocketbook and a length of rope. The pocketbook belonged to Mrs. Nolan and contained approximately $123 and personal papers.
Sergeant Burke and Captain O'Malley, both of the Orange Police Department, also responded to 51-53 North Park Street with Mrs. Nolan. They walked down the driveway to the rear of the apartment building where Burke spotted *131 two Negro males. Burke ordered them to halt, but both jumped fences and one escaped. The other, who turned out to be defendant, ran into the arms of O'Malley.
Defendant testified that he was in Orange on the evening in question but that he was alone. He stated that he went down the driveway adjacent to 51-53 North Park Street for the purpose of relieving himself. He claims that as he was leaving the driveway he was apprehended by O'Malley.
Mrs. Nolan was taken to the Orange Police Station where she was shown defendant. She hesitated in making an identification until defendant put on dark glasses which he was carrying. When he complied she stated, "Well, it is his stature and his build and his height, and I hate to say it but I am sure." In court, when asked if she could identify the defendant as one of the men she stated, "Well, he is slim like him and looks like him and I am sure it is him." Moreover, she noted that at the time of the offense defendant was not wearing a mustache as he was at the time of the trial, and, in addition, that his hair was thinner at the time the offense was committed.
Defendant first contends that the circumstances of his identification by the victim were so suggestive as to give rise to substantial likelihood of misidentification, thereby depriving him of due process of law. In support of this contention he relies on several facts incident to the identification procedure: that he was alone when viewed by Mrs. Nolan and not part of a line-up; he was the only male Negro shown to her; she was in need of medical attention when making the identification; she had but very short opportunity to observe the persons who assaulted her; and, finally, prior to the identification she was able to give only a vague description of her assailants. Essentially, defendant argues that the totality of these facts was such as to deprive him of a fair process of identification.
The United States Supreme Court in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), has set forth generally the standard of due process to be applied to *132 identifications such as are made in the case presently before us. In Stovall, defendant was accused of murdering a physician and seriously assaulting his wife. The suspect was brought, handcuffed, to the wife's hospital room, where he was identified as the assailant. She subsequently identified him at trial. The Court acknowledged that a confrontation for identification purposes may be so needlessly suggestive and indirectly coercive as to elicit mistaken identification, and thus deny the accused due process of law. The Court recognized that the procedure of showing suspects to individual witnesses and not as part of a line-up, has been the subject of great criticism, but the question as to whether the practice constitutes a denial of due process of law "depends on the totality of the circumstances surrounding [him]." (388 U.S., at 302, 87 S.Ct., at 1972) The Court affirmed the conviction despite what appeared to be the obviously suggestive nature of the confrontation.
In this State the failure of police to follow the line-up procedure will not, of itself, render the pretrial identification invalid as being unduly suggestive or totally unreliable. In cases where a suspect is displayed singly to a witness, "the absence of comparison ordinarily goes only to the weight of the evidence and not to its admissibility." State v. Matlack, 49 N.J. 491, 498 (1967); State v. Sinclair, 49 N.J. 525 (1967); State v. Grant, 102 N.J. Super. 164 (App. Div. 1968). In each of these cases, however, the factual situation was such that the witnesses involved had ample opportunity to view the defendant prior to or during the commission of the crime. In this case defendant claims that such ample opportunity was missing prior to the identification in police headquarters. However, we believe that this claim goes more appropriately to the question of the weight to be accorded identification by the trier of the fact, rather than to the question of due process.
Defendant argues that the police unnecessarily avoided the use of a formal line-up. We are satisfied, under the facts developed at trial, that the procedure followed in this case *133 comported with the convenience of all parties and prevented potentially unnecessary detention. Mrs. Nolan made her identification shortly after the crime had taken place and just after defendant had been placed in custody. The record demonstrates that the identification was made while her memory was fresh, and this supports the reliability of the recognition.
We do not find that there is a constitutional right to a line-up as such. The constitutional test may be more properly measured as a right on the part of defendant to such treatment as accords with due process of law. While there may be just criticism of individual confrontations and identifications because of inherent dangers of suggestiveness, we find, under the record here, that the identification process employed was not unreasonable or suggestive.
Defendant next contends that the recent decisions of the Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), require that counsel be present at a pretrial confrontation such as is involved here. Further, that absent such representation any subsequent testimony relating to such identification must be regarded as inadmissible.
In Wade, defendant, after indictment, was placed in a line-up for identification purposes, but his assigned counsel was not notified. The court held that the Sixth Amendment guarantee to the right of counsel extended to any "critical confrontation" during pretrial proceedings, and that a post-indictment line-up was such a "critical stage." In Gilbert, the court excluded all testimony with respect to a post-indictment line-up identification, absent defense counsel and, also, in-court identification testimony where there was no showing of an independent basis for the in-court recognition. While it is true that both of these cases dealt with post-indictment line-up procedures, it has been argued that the language of the opinions is broad enough to include such single confrontations as are involved in this case.
*134 In other jurisdictions the judicial trend has been to not require the presence of counsel, or the formal requisites of a line-up, where there has been what amounts to on-the-scene identification of a defendant by a victim or witness. Russell v. United States, 408 F.2d 1280 (D.C. Cir. 1969); Commonwealth v. Bumpus, 238 N.E.2d 343 (Sup. Ct. Mass. 1968); and Trask v. State, 247 A.2d 114 (Me. Sup. Jud. Ct. 1968).
This court in State v. Satterfield, 103 N.J. Super. 291, 294 (App. Div. 1968), also reached the same conclusion under a somewhat different set of facts, leaving open the question as to whether Wade is inapposite in any case.
The essential problem is whether the facts of this case, involving pre-indictment identification within a short period after the complained of incident, and immediately after the defendant was taken into custody, is such a critical stage of the proceedings as to require the presence of counsel, or whether the factual pattern is more akin to the on-the-scene identification where there is no such prescribed requirement. Decisions of federal courts in Rivers v. United States, 400 F.2d 935 (5 Cir. 1968); and United States v. Kinnard, 294 F. Supp. 286 (D.D.C. 1968), have held that all pretrial identification procedures require the presence of counsel for the suspect. On the other hand, the Illinois Supreme Court, in People v. Palmer, 41 Ill.2d 571, 244 N.E.2d 173 (1969), has held that the right to counsel in pretrial confrontation applies only to post-indictment situations. We find the reasoning of the Illinois Supreme Court in the last cited case to be more persuasive than the reasoning of the federal courts in the two decisions cited, when viewed in the light of the facts before us. Here the confrontation, as we have noted, occurred no more than 90 minutes after the crime was committed and while the victim remained in police headquarters; moreover, the identification took place shortly after defendant was taken into custody. In addition, the person presented for identification was not an individual selected at random, but a suspect apprehended in the immediate *135 vicinity of the scene of the crime shortly after its commission.
We do not suggest that the right to counsel cannot exist in pre-indictment identification proceedings, or in those preliminary investigations where the Federal Constitution has provided no explicit guarantees; nor do we hold that the right to counsel applies only to post-indictment proceedings. We conclude, under the facts of this case, that defendant was not denied his constitutional right to legal representation.
Defendant also contends that we should reverse his conviction because the trial judge did not conduct a voir dire examination of the events surrounding his original identification out of the presence of the jury, despite requests for such procedure having been made. The better practice is for the trial judge to conduct such proceedings out of the presence of the jury. We observe, however, that defendant did testify on his own behalf, and, further, that the trial judge, before submitting the case to the jury, made specific findings of fact as to the propriety of the identification procedure and concluded that the question of identity was properly for the jury. Considering these circumstances and the trial record, we find that the alleged error in procedure did not prejudice defendant. The procedure employed by the trial judge did not place him in a position which obliged him to determine that the identification procedure was proper and thus submit the question to the jury.
We have reviewed the other issues raised by defendant and find them to be without merit. The trial judge explicitly charged the jury on the presumption of innocence and that defendant was entitled to acquittal unless proved guilty beyond a reasonable doubt. The trial judge's answer to the question of a juror was perhaps equivocal, but we do not find that it was misleading so as to have produced prejudicial error, particularly in light of his charge considered in its entirety. State v. Lane, 52 N.J. 123, 125 (1968); State v. Hodgson, 44 N.J. 151, 162 (1965). We also find defendant's contention, that the trial judge should have granted a *136 mistrial because of the assassination of Senator Robert F. Kennedy during the trial, to be completely without merit.
The judgment is affirmed.