**UNITED STATES of America ex rel. Richard PENACHIO, Petitioner-Appellant,**

v.

**George A. KROPP, Warden, State Prison of Southern Michigan, Jackson, Michigan, Respondent-Appellee.**

**UNITED STATES of America ex rel. Joseph ANDRIACCI, Petitioner-Appellant,**

v.

**George A. KROPP, Warden, State Prison of Southern Michigan, Jackson, Michigan, Respondent-Appellee.**

**UNITED STATES of America ex rel. Lee MAGNAFICHI, Petitioner-Appellant,**

v.

**George A. KROPP, Warden, State Prison of Southern Michigan, Jackson, Michigan, Respondent-Appellee.**

**UNITED STATES of America ex rel. Peter DiFRONZO, Petitioner-Appellant,**

v.

**George A. KROPP, Warden, State Prison of Southern Michigan, Jackson, Michigan, Respondent-Appellee.**

Nos. 20913–20916.

United States Court of Appeals, Sixth Circuit.

Aug. 18, 1971.

habeas corpus in the United States District Court for the Eastern District of Michigan, Southern Division. Petitioners assert that their 1963 convictions in Michigan's Oakland County Circuit Court were invalid because of federal constitutional violations.

They present two issues. The first is that their rights were prejudiced by the introduction of evidence seized from them as a result of an illegal arrest and/or invalid arrest warrants.

As to this issue or issues, it appears, however, that appellants concede no exhaustion of remedies has taken place in relation to the claimed illegal arrest. And, as to the claim that the arrest warrants were illegal, Michigan has long held, with the approval of this court, "a plea to the information under Michigan law waives any irregularity in the complaint." *See* Rogers v. Kropp, Warden, 387 F.2d 374 (6th Cir. 1968).

The second issue, however, is not so easily resolved. Three of these four men, after being arrested subsequent to an attempted burglary under circumstances which have some aspects of hot pursuit, were placed in a room with a plainclothed detective and there viewed by two witnesses. It is asserted that the impermissible suggestiveness of this showup procedure (which took place in 1963) was such as to represent a due process violation prior to the decision of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). *Wade*, of course, has been held to be not retroactive. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

Such a claim requires a careful review of the facts. This the District Court accomplished by means of the transcript of the state court trial—a transcript which we also have reviewed. The District Judge summarized most of the aplicable facts in a manner which appellants' brief describes as objective:

"The following sequence of events is taken from the trial transcript. On Sunday, November 22, 1964, Gerald

Anna R. Lavin, Chicago, Ill., for appellants.

Stewart H. Freeman, Asst. Sol. Gen., Lansing, Mich., Frank J. Kelley, Atty. Gen., Robert A. Derengoski, Sol. Gen., Lansing, Mich., on the brief, for appellee.

Before EDWARDS, CELEBREZZE and PECK, Circuit Judges.

EDWARDS, Circuit Judge.

These are four appeals from a District Judge's denial of petitions for writs of

Haynes went to his beauty shop in Birmingham, Michigan. As he entered the store, he saw three men running out the back door. The wall that divides the beauty salon from the fur store next door had a large hole knocked through it. Mr. Haynes and a companion pursued the three men. The three men were seen getting into a 1963 or 1964 blue Ford, driven by a fourth person. The man on the passenger side of the car turned and looked at Mr. Haynes. (Later the same day at the police station, and also at trial, Mr. Haynes identified this man to be Andriacci.) Haynes called the Birmingham Police Department and gave a description of the men, the car and the license plate number. (Michigan License, FR 2616).

"A dispatch went out from the Birmingham Police Department to the surrounding communities. Officer Smith of the Lathrup Village Police, who had received two radio messages, came upon a 1963 Ford which had license number FR 2616. He got out of his car and yelled at the driver to stop. At this time, there were five (5) people in the car. He got a good look at the driver whom he identified in court as Di Fronzo. The car did not stop. It continued on. Four people got out of the car. (Officer Smith identified three of them in court as Andriacci, Magnafichi and Penachio). One of the four got back into the car and the car was driven away. The three men ran up a driveway and across a field. Officer Smith fired five shots at the fleeing car and then pursued it. While giving chase, he radioed to his dispatcher a description of the three who fled.

"Officer Gudenburr of the Southfield Police, responding to radio dispatches, stationed himself at Kennaway Court, Southfield, Michigan. (He had not received Officer Smith's message). Officer Gudenburr observed three subjects coming out of the woods and walking towards him. (In court, he identified them as Andriacci, Pena-chio and Magnafichi). He returned to his police car and radioed his dispatcher that he was going to check three subjects coming out of the woods. He then drove his car to a position abreast of them, stopped his car, got out, drew his revolver and ordered them to put their hands in the air. He asked them what they were doing in the area, to which Andriacci replied they were walking and the others nodded in agreement. Asking where they were from, they said Royal Oak. They said they had no identification. At this point, he arrested the three of them. He described Penachio as well dressed, wearing unmatched boots and an overcoat and no hat. His pants were wet from the knees down. He described Andriacci as well dressed, hatless, and wearing boots, a dark trench coat and dark trousers. Mr. Andriacci's coat was wet on the back and right side, his trousers were wet from the knees down and had a tear in the area of the knee. Magnafichi was also described as well dressed, wearing boots, a dark blue overcoat and blue trousers.

"After arresting Andriacci, Penachio and Magnafichi, he took them to the Southfield Police Station.

"Later the same day, the 1963 blue Ford was found abandoned.

"The preceding events occurred between 4:30 p. m. and 5:30 p. m. At approximately 6:40 p. m., at the Southfield Police Station, Mr. Haynes identified Andriacci. A few minutes later, Officer Smith identified Andriacci, Penachio and Magnafichi. * * *"

On these facts the Michigan Court of Appeals found that the lineups complained of were not unfair. People v. Andriacci, 11 Mich.App. 482, 161 N.W.2d 435 (1968).

We believe it pertinent to add that the state trial court transcript shows that witness Haynes testified that he was within approximately arm's reach of the getaway car when appellant Andriacci turned and looked at him. His identification of Andriacci at trial was positive

and apparently independent of the subsequent showup.

Officer Smith was the other witness involved in the disputed showups. He was an experienced police officer and investigator. He testified positively at trial that Andriacci, Penachio and Magnafichi were the three men whom he had seen get out of the getaway car at the roadblock and run off into the fields. He testified that it was a bright, sunshiny afternoon and that he got a good look at them and called in a detailed description of each by radio immediately after their escape.

Haynes had never asserted that he was able to identify more than one of the appellants. As to him we do not think the four-man lineup could have been impermissibly suggestive within the rule of Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

As to Officer Smith, who knew the officer who was the fourth man in the showup room and identified the other three, the showup must be viewed as one where suspects only are made available for identification. Both before and after the *Wade* cases such showups have been viewed by the courts with great concern. *See* Biggers v. Neil, 448 F.2d 91 (6th Cir. 1971). (Decided August 18, 1971). But in this case we have important factors lending weight to the District Judge's finding that the circumstances did not result "in default of due process."

Officer Smith had been alerted to the escaping burglars. He had been on the police force for four and one-half years and previously had served eight years in the Criminal Investigation Division of the United States Army. His observations of the three appellants were made on a bright, sunshiny afternoon and he recorded detailed descriptions of the men immediately thereafter. He positively identified the three appellants at trial as the three men he saw escape at the roadblock. The showup occurred less than an hour and a half after his first encounter with the men at the roadblock.[1]

The last of these circumstances taken alone has convinced the Court of Appeals for the District of Columbia that a showup of such proximity in time to the observation was not "unnecessarily suggestive." United States v. Perry, 449 F.2d 1026, (D.C.Cir. 1971); Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969); Bates v. United States, 405 F.2d 1104 (D.C.Cir. 1968); Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206 (1967), cert. denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968). *See also* United States ex rel. Anderson v. Mancusi, 413 F.2d 1012 (2d Cir. 1969).

The brief period of time between Officer Smith's encounter and the showup, his background of experience, his prompt recordation of descriptions which accurately fitted appellants and the hot pursuit features of this case are part of the totality of circumstances which convince us, like the District Judge, that no due process violation occurred in this case.

The judgment of the District Court is affirmed.

---

1. In contrast, in the *Biggers* case the showup witness was a woman who was the victim of a violent assault at night, without any lights, and who subsequently was able to give only the most general description of the assailant. The showup of appellant Biggers took place six months later, when he was brought alone into a room at the police station where the victim had been taken to view a "suspect." The identification of Biggers at trial was based almost entirely upon testimony concerning the showup identification.